## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## THOMASVILLE DIVISION

WILBERT MOBLEY,                        *

              Petitioner,           *

VS.                                    *        CASE NO. 6:05-CV-7 (HL)
                                           Social Security Appeal

JO ANNE BARNHART,                      *
Commissioner of Social Security,
              Respondent.           *

## REPORT AND RECOMMENDATION

The Social Security Commissioner, by adoption of the Administrative Law Judge's determination, denied Claimant's application for a period of disability and supplemental security income benefits, finding that he was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error, and he seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). The court's role in reviewing claims brought

under the Social Security Act is a narrow one.  The court may not decide facts, reweigh evidence, nor substitute its judgment for that of the Commissioner.[1]  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  It must, however, decide if the Commissioner applied the proper standards in reaching a decision.  *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980).  The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings.  *Bloodsworth v. Heckler*, 703 F.2d at 1239.  However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.*   The initial burden of establishing disability is on the claimant.  *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973).  The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic.  *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).

A claimant seeking Social Security disability benefits must demonstrate that she suffers from an impairment that prevents her from engaging in any substantial gainful activity for a twelve-month period.  42 U.S.C. § 423(d)(1).  In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act.  20 C.F.R. § 404.1 et seq.

Under the regulations, the Commissioner determines if a claimant is disabled by a

---

[1]Credibility determinations are left to the Commissioner and not to the courts.  *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991).  It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence.  *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).  See also *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

five-step procedure.  20 C.F.R. § 404.1520, Appendix 1, Part 404.  First, the

Commissioner determines whether the claimant is working.  Second, the Commissioner

determines whether the claimant has an impairment which prevents the performance of

basic work activities.  Next, the Commissioner determines whether the claimant's

impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the

regulations.  Fourth, the Commissioner determines whether the claimant's residual

functional capacity can meet the physical and mental demands of past work.  Finally, the

Commissioner determines whether the claimant's residual functional capacity, age,

education, and past work experience prevent the performance of any other work.  In

arriving at a decision, the Commissioner must consider the combined effect of all the

alleged impairments, without regard to whether each, if considered separately, would be

disabling.  *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).  The Commissioner's

failure to apply correct legal standards to the evidence is grounds for reversal.  *Id.*

## ISSUES

I.      **Whether the ALJ erred when he failed to order a consultative examination?**

II.     **Whether the Commissioner's decision that Claimant has the Residual
        Functional Capacity to perform light work is supported by substantial
        evidence?**

## DISCUSSION

### Administrative Proceedings

Claimant filed his current application for supplemental security income payments

3

on October 3, 2001.  (R-13, 37).  Claimant contends he became disabled on September

24, 2001, due to high blood pressure, chronic pain and swelling of the left ankle, and

advanced osteoarthritis of both knees.  (R-14, 62).  His application was denied initially,

and upon reconsideration. (R-4,10).  The claimant then requested a hearing in front of an

administrative law judge (ALJ) which was held on September 23, 2002.  (R-164).

Subsequent to the hearing, the ALJ found that the claimant was not disabled in a decision

dated October 18, 2002.  (R-10-19).  Claimant requested review of  the ALJ's finding by

the Appeals Council and on December 2, 2004, the Appeals Council denied review,

making the ALJ's decision the final decision of the Commissioner.  (R-4).

### Statement of Facts and Evidence

In the decision, the ALJ found that Claimant had severe impairments consisting of

obesity, swelling in the legs, high blood pressure, mild osteoarthritis of the right knee,

moderate osteoarthritis of the left knee, and intermittent gouty arthritis.  (R-14).  The ALJ

found, however, that those impairments, either alone or in combination, did not meet or

equal any of the relevant Listings. *Id.*  The ALJ then found that Claimant retained the

residual functional capacity to perform a significant range of sedentary work  limited by

Claimant's capacity: to sit for six hours; stand/walk no more than one hour in an eight-

hour workday; occasionally lifting and carrying of ten pounds; and Claimant must be able

to occasionally elevate his leg while continuing to work.  (R-16, 18).  Finding that

Claimant could not return to past relevant work, the ALJ looked to an impartial

vocational expert to find that Claimant could adjust to other work which exists in

significant numbers in the national economy.  (R-16-18).

## ISSUES

**I.  Whether the ALJ erred when he failed to order a consultative examination?**

Claimant argues that the ALJ should have ordered a consultative examination with an Orthopedic Specialist after Claimant's counsel made a motion for such during the hearing.  (Claimant's Brief, p.5 and T-189).   Claimant argues that this obligation arises because the ALJ has a basic duty obligation to develop a full and fair record. (Claimant's Brief, p.7); *citing* Graham v. *Apfel,* 129 F.3d 1420, 1423 (11th Cir. 1997).  Claimant further argues that "[t]he ALJ's basic duties to full[y] and fairly develop the record includes 'ordering a consultat[ive]  examination [if one is needed] to make an informed decision.'"  (Claimant's Brief, p.7).  *Durham v. Apfel*, 34 F. Supp 2d 1373, 1382 (N.D. Ala. 1998); *citing Cowart v. Schweiker*, 662 F.2d 731, 735-736 (11th Cir. 1981) (additional citations omitted).  The applicable code section for ordering a consultative examination is 20 C.F.R. § 416.912(f), which states:

> (f)  *Need for consultative examination*.  If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense.  See §§ 416.917 through 416.919t for the rules governing the consultative examination process.  Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources.  However, in some instances, such as when a source is known to be unable to provide certain tests or procedures or is known to be nonproductive or uncooperative, we may order a consultative examination while awaiting receipt of medical

> source evidence.  We will not evaluate this evidence until we
> have made every reasonable effort to obtain evidence from
> your medical sources.

20 C.F.R. §416.912(f).  Because this type of hearing is not an adversarial one, the ALJ has a duty to fully and fairly develop the record. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir.1997), citing *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir.1981).  In this case, the Plaintiff claims that a full and fair record would have been developed had an orthopedic  consultative examination been performed as he requested.  The Eleventh Circuit has held that the fundamental obligation to develop a complete and fair record may involve requiring a consultative examination of the claimant. *Smith v. Bowen,* 792 F.2d 1547, 1551 (11th Cir.1986); *See Reeves v. Heckler,* 734 F.2d 519, 521-522 (11th Cir.1984).  "Consultative examinations are not required by statute, but the regulations provide for them where warranted." *Smith* at 1551; 20 C.F.R. § 404.1517 (2000).  Therefore, it would appear that an ALJ has committed reversible error where he/she chose not to order a consultative examination when such an examination is deemed necessary "to make an informed decision." *Reeves,* 734 F.2d at 522 n. 1.

The onus is on the Plaintiff to provide to the Commissioner the medical evidence to support his impairment allegations.  *See,* 20 C.F.R. §§ 404.1512(a), (c); 416.912(a), (c).  In the instant action, the record demonstrates that plaintiff was represented by counsel.  Thus, the ALJ did not have a special duty to Claimant.  However, the ALJ must still follow the standards as set forth in the code, the rules and the regulations.

After the initial denial of his claim, Claimant filled out and filed a Reconsideration

6

Disability Report dated  December 26, 2001.  (R-71-76).  In that report, Claimant stated

that he "[had] a fracture in [his] right ankle that cannot be fixed" and Claimant further

stated that he had difficulty walking.  (R-71).  The x-ray taken of Claimant's right ankle,

supports his contention that he was diagnosed with a fracture in his right ankle and

subsequently referred to an orthopedist.  (R-132-133).  Additionally, the ALJ was

provided with a list of Claimant's prescribed medications weeks before the hearing was

held.  (R-82-83).  Said list included 800 mg Ibuprofen and 7.5/500 mg of Hydrocodone

for pain (1 tablet of each 3 times daily).  (R-83).  Claimant was also taking two

prescription medications for his osteoarthritis.  *Id*.  At the hearing the ALJ questioned

Claimant as to his fractured right ankle:

> ALJ:   . . . You say your ankle was fractured.  When did they
> determine that?
> C:       When I started having problems with my leg, Dr.
> Fernandez x-rayed it, and he told me that I had a fracture in
> my ankle, and I didn't know it.
> ALJ:   Um-hum.
> C:       And I –
> ALJ:   When, when was that?
> A:       Probably – it was before I quit work, and he told me
> that I had a fracture in my, in my ankle, and I asked him, I
> said, well, I, I, you know, I told him, I don't know anytime
> that I fractured a ankle, and I asked him what it might come
> from, and he said it might have been from the arthritis, you
> know.  He don't, he don't know what caused it.
> ALJ:   Um-hum.  Did they treat that separately?  Did they do
> anything about the fracture?
> C:       No, because he said there wasn't too much he could,
> he could do with it, you know, and, and I'm, and I'm just, you
> know –
> ALJ:   Okay.  It was an old fracture and –
> C:       Yes, sir.

ALJ:   – there was nothing he could do for –
C:     Yes, sir.

(R-181-182).  The medical record is replete with references to Claimant's osteoarthritis,

including x-rays of Claimant's knees.  (R-104, 105).  There was also testimony from

Claimant that his legs hurt and swell and keep him from being outside very long or

exercising.  (R-182).  Claimant further testified that his knees swell even when he is

sitting and demonstrated such to the ALJ at the hearing by showing the ALJ how his legs

had swollen since the beginning of the hearing.  *Id*.

The Eleventh Circuit has held that "refusal to follow prescribed medical treatment

without a good reason will preclude a finding of disability," and "poverty excuses

noncompliance."  *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988).  It also then

follows that Claimant cannot be faulted for failing to seek additional medical

consultations for which he cannot afford due to poverty.  When counsel made the motion

for an orthopedic consult, he stated that Claimant could not afford to pay for an

orthopedic consult on his own.  Thereafter, the ALJ asked Claimant and Claimant's

counsel whether his treating physician had referred him to an orthopedic specialist.  (T-

189).  Claimant stated "no," and Claimant's counsel stated "not to my knowledge."  *Id*.

The government cites to the record to show that Dr. Fernandez did consider making an

orthopedic referral on July 30, 2001, but states "apparently such a referral was not made."

(Government's Brief, p. 4 and R-131).  However, the record shows that Dr. Fernandez

did, in fact, refer Claimant to an orthopedic specialist.  (R-130).  Unfortunately, nothing

8

in the record to indicates whether Claimant was actually seen by the orthopedic specialist. In his motion for a consultative orthopedic examination, Claimant's counsel stated that Claimant did not have the money to see an orthopedic specialist. (R-189). Furthermore, at the hearing Claimant testified that he doesn't always have the money to pay for his prescriptions and that Dr. Fernandez gives him samples because he doesn't have any money to buy medicine. (R-185). Claimant also testified that "[n]obody in my house is working, and my bills get paid by my mother and father and my son. Whatever they can give me to pay bills, that's the way I've been getting by for the last year." *Id*.

It is clear from the ALJ's findings that he did not agree with the consulting DDS physicians that Claimant was capable of light work, including walking or standing six hours in and eight hour workday. (R-16). In fact, as to that opinion, the ALJ stated:

> The undersigned gives this opinion little evidentiary weight. Evidence of the claimant's intermittent leg edema and obesity indicates that he can not stand or walk for this amount of time on a regular and continuing basis. . . . Having considered the evidence of record as a whole, the undersigned finds that the claimant has the residual functional capacity to sit for six hours and to stand/walk for no more than one hour total in an eight hour workday. He can occasionally lift and carry up to ten pounds. He must be able to occasionally elevate his leg while continuing to work.

*Id*. It should be noted that the ALJ found Claimant credible as to his impairments, excepting the degree of limitations. (R-15). The ALJ, however, discredited the state agency consulting opinion. (R-16) Additionally, the ALJ decided not to give Claimant's treating physician's opinion any evidentiary weight, finding that the objective medical

evidence did not warrant a finding of "total disability."[2]  (Exhibit A, p.8, labeled page 4

of 8).  The ALJ does not refute the diagnoses or medical evidence as found by Dr.

Fernandez, only his opinion as to Claimant's degree of disability.  *Id.*  The ALJ

discussed, at length, evidence that was not produced nor actions taken by Claimant's

doctor:

> Although evidence shows the claimant to have hypertension,
> that condition is controlled as long as the claimant takes
> medication.  Moreover, there is no evidence in the file to
> show what limitations the claimant's high blood pressure
> imposes. . . . Moreover, the medical evidence shows that Dr.
> Fernandez continues to see the claimant on a periodic basis
> treating him conservatively with prescription medication.  Dr.
> Fernandez has not recommended any other more aggressive
> treatment nor has he referred Claimant to any specialists.
> There is no indication in his treatment notes of any
> recommendations he may have made to the claimant
> regarding weight loss or other treatment for obesity.  He has
> not prescribed the claimant a cane nor has he said that the
> claimant can not ambulate effectively without an assistive
> device.

*Id.*  Also falling under the duty to fully develop the record, the ALJ has an obligation to

contact (or recontact) Claimant's treating physician.  The applicable code section is 20

C.F.R. § 416.912(e), which states:

> (e)  *Recontacting medical sources.*  When the evidence we
> receive from your treating physician or psychologist or other
> medical source is inadequate for us to determine whether you
> are disabled, we will need additional information to reach a

---

[2] Page 4 of 8 from the ALJ's Findings was omitted from the original record.  A copy of the ALJ's report was requested by this office and faxed from the Social Security Administration.  Said copy has been attached to this report and recommendation as Exhibit "A."

determination or a decision.  To obtain the information, we
will take the following actions.
(1)  We will first recontact your treating physician or
psychologist or other medical source to determine whether the
additional information we need is readily available.  We will
seek additional evidence or clarification from your medical
source when the report from your medical source contains a
conflict or ambiguity that must be resolved, the report does
not contain all the necessary information, or does not appear
to be based on medically acceptable clinical and laboratory
diagnostic techniques.  We may do this by requesting copies
of your medical sources's records, a new report, or a more
detailed report from your medical source, including your
treating source, or by telephoning your medical source. . . .
(2)  We may not seek additional evidence or clarification
from a medical source when we know from past experience
that the source either cannot or will not provide the necessary
findings.

20 C.F.R. §416.912(e).  Subsection (e) specifically states that medical sources will be

recontacted when the evidence is inadequate or too ambiguous to determine whether a

claimant is disabled.  Contrary to the ALJ's Findings, the evidence of record shows that

Dr. Fernandez did refer Claimant to an orthopedic.  (Exhibit A, p. 8, labeled 4 of 8 and

R-130).  The ALJ also states that Dr. Fernandez did not recommend more aggressive

treatment, did not have any treatment notes regarding Claimant's obesity and possible

treatment, nor did Dr. Fernandez prescribe Claimant a cane.  *Id*.  The ALJ appears to

raise these issues to indicate that Dr. Fernandez did not really think Claimant was

completely impaired because of the lack of information as to the aforementioned

treatment options.  The record is replete with Dr. Fernandez's diagnosis and notations of

Claimant's morbid obesity.  (R-119-120, 122-124, 142-144).  The ALJ appears to be

11

concerned that Dr. Fernandez did not encourage Claimant to lose weight or speak to Claimant regarding his morbid obesity, which seems to be a strange assumption on the part of the ALJ considering the impairments Claimant was under Dr. Fernandez's care for.  If this was the ALJ's concern, he had a duty to re-contact Claimant's physician to fully develop the record.  As to the lack of a prescription for a cane or any other ambulatory device, Claimant testified that he did not have the money to buy his prescriptions.  Furthermore, the ALJ never asked Claimant if he used a cane.  It appears the ALJ had questions regarding Claimant's treatment that he either ignored or he simply failed to fully develop those answers in the record.  If nothing else, the information as to Claimant's treatment for morbid obesity and the information as to Claimant's fractured ankle was ambiguous.  Based on the aforementioned facts, this court believes that the record was inadequate for the ALJ to make a determination.  Additionally, the ALJ failed to even address the requested consultative examination, much less explain why said motion was not being granted when the only testimony of record indicated that Claimant was without sufficient funds to procure his own consultative orthopedic examination. Therefore, this case should be remanded for the ALJ to order an orthopedic evaluation as to Claimant's alleged impairments.  After evaluation, the ALJ should discuss the evidence which supports his residual functional capacity assessment, including, but not limited to, the results of Claimant's consultative orthopedic examination.

**II.  Whether the Commissioner's decision that Claimant has the Residual Functional Capacity to perform light work is supported by substantial evidence?**

Claimant correctly points out that the ALJ did not find that he had the residual functional capacity to work for a total of eight hours a day. In his Findings, the ALJ stated that Claimant was capable of sitting for six hours and stand/walk for "no more than one hour total in an eight-hour workday." (R-16). SSR 96-8p states:

> Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Furthermore, case law in this circuit indicates that even a seven and a half hour work day, five days a week, does not qualify as working on a regular and continuing basis. *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997). In *Lewis,* Claimant's treating cardiologist, Dr. Anderson, determined that Claimant could "sit for four hours at one time and during the entire day, stand for two hours at a time or during the whole day, and walk for one hour at one time or during the entire day." *Id.* at 1438. Dr. Timberlake completed a Physical Capacities Evaluation on August 30, 1991, and another on November 1, 1992. *Id.* In his evaluations, Dr. Timberlake found that Lewis could work up to seven hours a day and seven and a half hours, respectively. *Id.* The non-examining consulting physicians, however, found Claimant's impairments less restricting and determined that Claimant could work a eight hour work day. *Id.* At the hearing in *Lewis*, the vocational expert testified that "the restrictions in the Physical Capacities Evaluations completed by Dr. Anderson and Dr. Timberlake would make him ineligible for even sedentary work because of his inability to sit, stand or walk for an entire eight hour work day." *Id.* at 1439. The Eleventh Circuit Court of Appeals confirmed such, stating "[a]s Dr. Griffin, the vocational expert, testified, if the treating doctors are right, Lewis is unemployable. If not, then he can do sedentary work

13

and is no longer disabled." *Id.*   Therefore, a Claimant must be able to work an eight hour

workday (or an equivalent work schedule) or be declared disabled under the Social Security Rules

and Regulations.  A non-examining physician's statement that a Claimant can work an eight hour

day does not out-weigh a treating physician's statement that they can not, without good reason.

*Lewis*, 125 F.3d at 1440.

Here, ALJ stated that he was giving the DDS consulting physician's opinion that Claimant

could stand for six hours in an eight hour workday, little evidentiary weight because "[e]vidence

of the claimant's intermittent leg edema and obesity indicates that he can not stand or walk for

this amount of time on a regular and continuing basis."  (R-16).  Instead, the ALJ found that

Claimant could sit for 6 hours and stand/walk for no more than an hour, equaling only a seven

hour work-day.  *Id.*

Furthermore, the vocational expert (VE) testified that Claimant might be able to prop his

leg up on a stool or a chair and still perform sedentary work, but that he did not know whether

that would be high enough to drain the fluid.  (R-187).  In response, Claimant testified that he

would have to prop his legs up, elevated above his body, during the day to relieve the swelling.

(R-182, 187).  The VE stated that assuming Claimant's hypothetical individual's specific work

restrictions, such an individual could work as an emergency dispatcher, a security clerk, and a

maintenance dispatcher.  (R-188).  The ALJ then asked the VE  if the hypothetical individual

would still be able to do those jobs if he had to lie down and prop up his legs, in the way that

Claimant testified was necessary to relieve the swelling.  (R-188).  The VE testified that Claimant

would not be able to perform those jobs with that additional limitation.  *Id.*  In his Residual

Functional Capacity Assessment, the ALJ found that Claimant would occasionally need to elevate

his leg while continuing to work.  (R-16).  The ALJ then found that Claimant was capable of performing the three jobs as stated by the VE.  (R-17).  Besides Claimant's testimony, there was no other testimony or affidavit from any other source, nor any medical records to indicate that Claimant was being untruthful as to how high he needed to elevate his legs to relieve the swelling. Nor did the ALJ state that he found Claimant untruthful or not credible as to that issue. However, despite the VE's testimony that the type of elevation as stated by Claimant would disqualify Claimant from performing work as a emergency dispatcher, security clerk, or maintenance dispatcher, the ALJ still found that Claimant was capable of performing said jobs.

The ALJ's findings as to Claimant's Residual Functional Capacity and ability to make an adjustment to work that exists in significant numbers in the national economy, are inconsistent with the evidence of record.  Therefore, this case should be remanded to the ALJ for further explanation of his findings or an award of benefits to Claimant.

## CONCLUSION

In reviewing the record, it appears that the ALJ's decision is legally inadequate. Therefore, having found that the ALJ's findings and discussion insufficient to permit this court to determine whether the ALJ properly considered the Claimant's condition as a whole and whether the ALJ applied the correct legal standards, this court should remand the claim to the Commissioner for reconsideration and articulation as to the finding of disability.  Specifically, this case should be remanded for the ALJ to order a consultative orthopedic examination and for the ALJ to articulate his findings as to Claimant's ability to work an eight hour workday, with or without an additional leg elevation restriction.

The ALJ should then re-evaluate Steps Four and Five of the sequential disability analysis to determine whether the Claimant can return to past work or perform any other work based on his limitations.

      **WHEREFORE**, it is the recommendation to the United States District Judge that this case be remanded to the Commissioner for further administrative action as set out above.

      Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this recommendation with the United States District Judge to whom this case is assigned within ten (10) days after being served a copy of this Recommendation.

      THIS the 7th day of December, 2005.

                                   S/G. MALLON FAIRCLOTH
                                   UNITED STATES MAGISTRATE JUDGE